Marvin, J.
The case of F. B. Many v. The City cf Cleveland^ and George R. Warden, .director of public works, Albert G. and. Mark R. Daykin, partners, doing business under the firm name of Daykin Brothers, is here on appeal. The plaintiff is a taxpayer of the city of Cleveland. H9 applied to the-director of law to have this suit brought, and that officer declined to bring it; hence it is brought by this plaintiff What he seeks to. do is to have an injunction allowed, restraining the defendants from entering into a contract for the furnishing of a certain number of street lamps for the-lighting of streets in this city.
On December 80,1898, by and through" Gao. R. Warden-who was the director of public works, the city advertised in one of the newspapers of this city, for bids for the furnishing of these lamps. The advertisement stated that specifications for the lamps were on file in the offioe of the director of public works,and that to those specifications bidders were-referred. Bids were to be furnished on or before twelve-o’clock noon, on January 26, 1899. There'were at least two bidders. One of the two bidders filed a bid signed “DaykinBrothers, A. G. Daykin.” The petition alleges that that bid will be or, perhaps,has been accepted; that a contract will be entered into with Daykin Brothers or A. G. Daykin, unless an injunction is allowed.
The petition sets out that the bid was not in conformity with the statute, which provides that the names of all the partners in a partnership which makes a bid and, in all cases, all persons interested in the bid shall be given in the written» proposal or bid.
It is said that the bid was made by A. G. Daykin and MR. Daykin, partners as Daykin Brothers. That it does not disolose any other person interested in the bid, except A. G~ Daykin. We are satisfied from the evidence, that nobody ■ else is interested in the bid. Daykin says that be alone constitutes the'proprietor of the business which is known by the name of Daykin Brothers; and nobody disputes him.
We are satisfied that the bid is net bad for failure to dis- *60 dose the names of all those interested. From the evidence, it jdoes disclose the name of A.- G. Daykin, and, from this evidence, nobody else was interested.
But it is said that Daykin’s bid did not comply with-the ¡specifications. One-of these specifications' is, “Each bid shall give the make and style of burner, and candle-power, and shall be accompanied by a lamp completely equipped with sample burner and all necessary appliances for separating the burner, ” etc.
The evidence shows that at the time of Daykin’s bid, he had present in the office of the director of public works, a lamp; that is,he had a lantern together with a burner,which together, as we understand it, constitutes the lamp.
That lamp did not, in all its details, correspond with the specifications, which, among other things, contained the following: “The lanterns, whether square or cylindrical in their cross section, must be provided with glass or other transparent bottoms,and surmounted with a top or dome of iridescent and light-reflecting material,and said top or dome .provided with a ventilatiug cap of heavy copper, to assure perfect ventilation and prevent the ingress of insects, and the entire construction to be such as net to be affected in •any manner by air currents or high winds.”
The testimony was somewhat conflicting as to whether the •lamp which was submitted by Daykin at the time Ir's bid was made, had the right kind of a top; whether it was provided with such a device as would prevent insects from getting within the lantern: and whether it was so constructed ¡as that air currents would not disturb the right.
The evidence shows that if the contract is entered into, it i's not expected that exactly such a lamp as that which was •present at the bidding and furnished by Daykin, is to be used; but the contract which will be entered into if this injunction is not allowed, is in evidence before us, and thát oontract has, as a part of it, all the specifications which were on file in the director’s office. So that, if this injunction is allowed, it will prohibit the city from entering info ¡a oontract in’jwhich the party with whom it is to contract, *61 .-agrees to furnish everything which, the specifications require.
It would seem as though, perhaps, a proper time to seek .to.enjoin, would be when the authorities undertake to pay for lighting, where one has failed to comply with the contract, for every item of the specifications which is .upon file, is a part of the contract. But, however that may be, wa are not satisfied that the lamp that was at the office of the director at the time the bids were received, and that was furnished by Daykin, did not substantially, so far as every part of it except it be the bottom is concerned, correspond -with the specifications.
Mr. Daykin testified that he understood the bottom to include all that part of the lantern which would be below what might be designated the tup; that is, all below the rail; at the top of the glass is a metallic frame which was designated by Mr. Daykin as the rail, whereas it is urged on -the other side and testified to by several witnesses that the bottom is that part which an ordinary person would understand to be the base, and on which the other parts rest. 'The lantern which, however, Daykin, as the evidence shows, is to furnish if the contract is entered into, is cylindrical in form and contracts toward the bottom where it rests, so -that the part which is directly beneath the top is transparent, and the base on which it rests,is not transparent. The purpose of the city is to have each lamp of 70-candle power, and evidently, the purpose of having the transparent bottom is to have it lighted about the lamp base; and the construction of-that lamp, as shown here, as shown to us,'is such as will do that. It seems to us it would be very technical to say that because the base upon which it rests is not transparent, it fails so materially to conform to the specifications as to justify an injunction to prevent its being contracted for. But as already said, the contract, if entered into, the one here, requires every thing in the specifications to be done.
But it is said that the lamp that accompanied the bid-— there must have been a lamp accompanying the bid, and- that lamp must be the one that corresponds in all *62 respects with the specifications, and the one for which the-city must oontraot, if it contracts at all.
We were cited to the case of Jenney v. Des Moines et al., 103 Iowa, 347, in which, among other things, this is found-in the syllabus,.third clause: “The requirement in the-specifications for a public improvement that each bidder shall submit with his bid ‘strain sheet and fully detailed plans,’ does not affect the validity of the award of the contract where the bids were made upon the plans and specifications furnished by the city, and the detailed plans furnished by the bidders were merely to advise the authorities of the bidder’s interpretation of the plans and specifications and their method of execution.” This was where advertisments for the building of a bridge were made; and it was-required that strain sheet and fully detailed plans should be filed with the bid. The bidder did not file -any strain sheet and fully detailed plans: but the court said that that did not invalidate his bid, because it would be only his interpretatiocn of the specifications, if it had been filed, and the specifications would govern,- and he bid under the specifications.
Our own Supreme Court, in a case cited by plaintiff, Beaver & Butt v. Trustees,etc., 19 Ohio St.,97,use this language in the opinion on page 108: “The proposals are to be in writing and sealed; and the action of the trustees is to be taken on the basis of what those proposals are found to be when opened, and not on what they may have been intended to be, but are not. To hold otherwise would be to nullify or reverse the evident policy of the statute, and to render possible and easy the exercise of such favoritism by the trustees toward particular parties as it is the obvious policy and intention of the statute to render impossible.
Now, whatever may have been outside of the proposals, the proposals that are made, are sealed. When they are opened, they show what the proposal is. The proposal that Was filed by Daykin, which was to correspond with the specifications, showed what he was to do, and whether the lamp corresponded or not, would only be his interpretation *63 of the specifications; but, if he enters into the contract, by whioh he undertakes to carry out the specifications in full, we think the party ought not to be enjoined from making such contract.
Wilcox, Collister, Hogan & Pinney, for Plaintiff.
Minor G. Norton, Director of Law, for Defendant.
It was urged, on the hearing, that the authorities to whom the bid was submitted, rejected, in the first place, the bid, and had negotiations later by whioh they accepted it as modified. It appears they did aooept it as modified. The specifications show they did not immediately accept; but we do not think that invalidates the bid. And the petition is dismissed.